```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

Willie Harris,                        :
     Plaintiff,                       :
                                      :
v.                                    :   Civil No. 3:02cv1580 (JBA)
                                      :
Lt. R. Meulemans, Warden Leslie       :
Brooks, Vincent Santopietro,          :
and Peter Matos,                      :
     Defendants.                      :
```

**<u>RULING ON DEFENDANTS' MOTION TO DISMISS [DOC. # 15] AND PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL [DOC. # 19]</u>**

Plaintiff Willie Harris, a prisoner in the custody of the Connecticut Department of Corrections, has filed a complaint <u>pro se</u> under 42 U.S.C. § 1983 alleging that defendants violated his right to due process by failing to afford him a fair hearing concerning a disciplinary matter that resulted in his classification as a "Security Risk Group Safety Threat Member" ("SRGSTM").  Defendants now move to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  <u>See</u> [Doc. # 15]. Plaintiff has opposed the motion to dismiss, <u>see</u> [Doc. # 20], and has moved for appointment of counsel, <u>see</u> [Doc. # 19].  For the reasons that follow, defendants' motion to dismiss will be granted and plaintiff's motion for appointment of counsel will be denied.

**I.   FACTUAL BACKGROUND**

Plaintiff's complaint [Doc. # 3], alleges the following facts, which will be accepted as true for purposes of deciding

1

the motion to dismiss. On July 2, 1999, while he was incarcerated at Cheshire Correctional Institution, plaintiff was stabbed by another inmate. Plaintiff alleges that even though he was the victim of the stabbing, he was given a disciplinary ticket for fighting. He does not allege that there were any further proceedings on this ticket.

After returning from the hospital, plaintiff was placed in the segregation unit. He alleges, "According to the Administration Directive an[] inmate should be given notice of his/her placement within 72 hours of placement in the seg. unit. I didn't receive notice until July 14th 1999 which is eight days after my placement." Complaint [Doc. # 3] at 4. Plaintiff further alleges that on July 22, 1999 he was issued a disciplinary report charging him with being a Security Risk Group Safety Threat Member ("SRGSTM") due to alleged membership in a gang. Harris denies ever being affiliated with or being the leader of any gang.

Plaintiff was transferred to Osborn Correctional Institution, remaining on segregation status. At a hearing on August 12, 1999, Lt. R. Meulemans found plaintiff guilty, acting on confidential information as well as plaintiff's admissions that he knew an inmate named English and that he "was working in the kitchen." Id. at 5. The disciplinary report attached to the complaint indicates that plaintiff was designated a SRGSTM and

sanctioned with 60 days loss of visitation, 30 days loss of recreation, and 15 days in punitive segregation.  No loss of good time credit is reflected.

Plaintiff states that he appealed the designation to the Warden of Osborn, Leslie Brooks.  After being transferred to Garner Correctional Institution, he also appealed his gang designation to Vincent Santopietro, the Director of Security, but was unable to obtain a change in his Elm City Boys SRGSTM designation.  Finally, plaintiff appealed to Peter Matos, Deputy Commissioner of Operations, but defendant Matos also "concurred with" the hearing officer's decision.  Id. at 8.

Plaintiff alleges that he "did not receive a fair hearing" because he "never had a chance to defend [him]self from this false charge."  Id. at 7.  In his opposition papers, plaintiff contends that his disciplinary proceedings were deficient in several respects.  First, he argues that a "more extensive investigation should have been conducted with witnesses and staff called before the panel."  Pl. Response [Doc. # 20] at 3.  Second, he contends that the disciplinary hearing was held and a decision made 20 days after the stabbing incident, when prison rules required a decision within 24 hours.  Id.  Third, plaintiff argues that the "disciplinary infraction itself was written and co-signed by the same person - Capt. Peters of Cheshire Corr[ectional] Inst[itution].  This, too, is a violation of

procedures...." Id. at 5.  Finally, plaintiff argues that "a favorable decision at the disciplinary hearing in question would indeed have had an effect on the plaintiff's release dates (maximum and minimum dates), level 2 eligibility, half-way house eligibility, community and work release eligibility as well as his parole eligibility." Id. at 6.  Additionally, plaintiff argues that he was unable to accrue 31 months of good time credit while classified as a gang member.  Id. at 4.

**II.  STANDARD**

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  To survive the motion, the plaintiff must set forth "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957), (quoting Fed. R. Civ. P. 8(a)(2)); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46 (footnote omitted), see also Jahgory v. N.Y. State Dep't

of Educ., 131 F.3d 326, 329 (2d Cir. 1997).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

### III. DISCUSSION

Defendants move to dismiss the complaint on the grounds that "[t]he plaintiff has no liberty interest in any classification decision based on a finding that he is a member of a gang" and "[t]he plaintiff did not lose any good time as a result of the [disciplinary] tickets in question and, as a result, such tickets did not implicate a liberty interest."  Def. Mem. of Law [Doc. # 15-1] at 1.[1]

    **A.**    **Due Process Standard**

To state a claim for violation of procedural due process, Harris must satisfy a two-part test: first he must show that he had a protected liberty interest and, second, if he had such an

---

[1]Defendants do not argue, and therefore the Court does not address, the question whether plaintiff's complaint is barred by the statute of limitations.  The three-year statute of limitations for personal injury cases in Conn. Gen. Stat. § 52-577 applies to suits under 42 U.S.C. § 1983.  Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994).  The statute begins to run on the filing of disciplinary charges, Washington v. County of Rockland, 373 F.3d 310, 319 (2d Cir. 2004), which in this case was August 12, 1999.  Plaintiff's complaint was signed on August 27, 2002, and filed with the Court September 6, 2002, more than three years after the date charges were filed.

interest, that he was deprived of that interest without being afforded due process of law.  Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997); see generally Wolff v. McDonnell, 418 U.S. 539, 557 (1974).

A prisoner's liberty interest to be free from disciplinary segregation or other restraint is not inherent in the Due Process Clause of the Fourteenth Amendment, but "may under certain circumstances" be created by state statute or regulation.  Sandin v. Conner, 515 U.S. 471, 483-84 (1995).  If so, a prisoner's liberty interest "will be generally limited to freedom from restraint which... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.  In other words, "a prisoner has a liberty interest only if the deprivation of which he complains is atypical and significant and the state has created the liberty interest by statute or regulation."  Sealey, 116 F.3d at 52 (emphasis added) (citing Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (per curiam)).

In this case, Harris's complaint centers on his allegedly erroneous classification as a "Security Risk Group Threat Member."  He claims that because he was unlawfully classified as a gang member, he has lost the ability to accrue future good time credits and to be assigned to a half-way house or other minimum-supervision setting.  He does not appear to claim that he lost any previously-accrued good time.

**B.     Security Risk Group Threat Member Classification**

The Supreme Court has held that federal prisoners have no protected interest in their classification that would invoke due process protections, because "Congress has given federal prison officials full discretion to control these conditions of confinement," including the level of privileges attendant to specific classifications.  <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1976).  Similarly, where state prison officials are given discretion in determining inmate classifications, state prisoners do not have any constitutionally protected right to a particular classification.  <u>See</u> <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1207 (8th Cir. 1990) (Where a prisoner has "not pointed to any statute, regulation, or policy statement that sufficiently limits prison officials' discretion so as to create a protected liberty interest in class status," his/her designation "does not present a due process issue."); <u>Wheway v. Warden</u>, 215 Conn. 418, 431-32, 576 A.2d 494, 501 (1990) ("Prison classification and eligibility for various rehabilitation programs, wherein prison officials have full discretion to control those conditions of confinement, do not create a statutory or constitutional entitlement sufficient to invoke due process.") (citing <u>Moody</u>, 429 U.S. at 88-89 n. 9; <u>Meachum v. Fano</u>, 427 U.S. 215, <u>reh'g. denied</u>, 429 U.S. 873, 97 (1976)).

Under Connecticut law, the Commissioner of Correction retains discretionary authority to classify prisoners at any

security level.  Conn. Gen. Stat. § 18-81 ("The commissioner shall be responsible for establishing... classification... programs throughout the department.").  Pursuant to this authority, the Commissioner has promulgated Administrative Directive ("A.D.") 6.14, entitled "Security Risk Groups,"[2] which creates the designations "Security Risk Group Member" and "Security Risk Group Safety Threat Member."  For an inmate with the latter designation, "Statutory Good Time credits shall not be authorized.  Meritorious Good Time award shall not be granted." Id. at § 15(R).

The Commissioner by statute has discretion whether to award so-called statutory good time: "any person sentenced to a term of imprisonment... may, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a commutation or diminution of his sentence in the amount of ten days for each month..."  Conn. Gen. Stat. § 18-7a (emphasis supplied).  Additionally, by statute the Commissioner has discretion whether to award "outstandingly meritorious performance" good time: an inmate "may have not more than one hundred and twenty days deducted from any one continuous term of imprisonment as an outstandingly meritorious performance award in the discretion of the Commissioner of Correction for exceptional personal achievement, accomplishment and other outstandingly

---

[2]Available at http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0614.pdf (last visited 9/21/05).

meritorious performance...." Conn. Gen. Stat. § 18-98b (emphasis supplied).

Thus, the applicable statutes vest the Commissioner with discretion whether to award statutory good time or whether to give an "outstandingly meritorious performance award." For this reason, Connecticut inmates have no statutorily-created right to accrue good time credits, and A.D. 6.14, § 15(R), which prohibits an SRGSTM from being awarded statutory good time or outstanding meritorious good time, does not violate any state-created liberty interest in accrual of such good time credits.

Additionally, pursuant to DOC rules, an SRGSTM must be placed in a Level 4 Close Custody Unit and is ineligible for community release programs, including transitional supervision or residential program placement. A.D. 6.14 § 15(A); A.D. 9.2, "Inmate Classification," at § 11.[3] As noted above, Conn. Gen. Stat. § 18-81 grants the Commissioner of Correction discretion to classify inmates for safety purposes, and the Connecticut Supreme Court has held that "prison authorities have full discretion to grant or deny... early release programs" such as "furloughs, work release, home release, education release, home visits, etc." Wheway, 215 Conn. at 431, 433, 576 A.2d at 501. Therefore no state statute or policy creates a right to participate in any early release programs, and Harris's claim that his SRGSTM

---

[3]Available at http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0902.pdf (last visited 9/21/05).

classification denies him eligibility for placement in a half-way house or community or work release program is insufficient to state a claim under the Due Process Clause.

Only where a prisoner's classification as a security threat deprives him/her of already-earned statutory good time credits must the prisoner be afforded due process prior to receiving such a designation. See Wolff, 418 U.S. at 558;[4] accord Torres v. Comm'r of Correction, 84 Conn. App. 113, 118 n.2, 851 A.2d 1252, 1255 n.2 (2004) (finding prisoner entitled to due process hearing where, "as a result of the classification in the security risk group, the petitioner lost some previously earned good time credit..."); Santiago v. Comm'r of Correction, 39 Conn. App. 674, 682-83, 667 A.2d 304, 308 (1995) (where inmate alleged "a loss of earned statutory good time credits, we find that he has alleged facts sufficient to implicate a recognized liberty interest."). Here, Plaintiff does not contend that he has been deprived of any accrued credits, and Connecticut has not created a right to accrue future good time credits.

In summary, the Commissioner has discretion to classify inmates and to decide whether to award statutory good time

---

[4] Plaintiff misreads Wolff as suggesting that prisoners have a right to accrue statutory good time credits. See Pl. Response at 4. In Wolff, 418 U.S. at 557, Nebraska had created a statutory right to good time credit and also provided by law that good time credit could only be taken away for major misconduct, and therefore the Supreme Court held that certain due process protections must be afforded to Nebraska inmates before they were penalized by having those credits taken away.

credits or grant community placement; therefore Harris has no protected liberty right to be placed in a particular security classification, to accrue good time credits, or to be placed in less-restrictive half-way house or work-release settings that the Commissioner has decided are unavailable to prisoners with the SRGSTM designation.  The Court thus need not reach the question whether plaintiff has sufficiently alleged that the sanctions imposed on him were atypical and significant under Sandin.[5]  Furthermore, because Harris had no constitutionally protected liberty interest in a particular classification, he had no constitutional right to any particular procedures during the challenged 1999 disciplinary hearing.  Thus plaintiff's allegations of the disciplinary hearing's irregularities and procedural deficiencies, including the length of time that the disciplinary hearing was held following the stabbing incident, the length of time following his placement in segregation that plaintiff received notice of the charge, or the fact that the disciplinary ticket was written and co-signed by the same officer, are not cognizable as constitutional violations.

---

[5] See Tellier v. Fields, 280 F.3d 69, 80 (2d Cir. 2000) ("[W]hether a plaintiff's confinement satisfies the 'atypical and significant hardship' requirement involves factual determinations.") (citing Miller v. Selsky, 111 F.3d 7, 8-9 (2d Cir. 1997)).

**IV. CONCLUSION**

Accordingly, defendants' Motion to Dismiss [Doc. # 15] is GRANTED, plaintiff's Motion for Appointment of Counsel [Doc. # 19] is DENIED AS MOOT, and this case will be closed.

IT IS SO ORDERED.

/s/

_____
JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, September 23, 2005**.